UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SABOURAH EDWARDS, | ) | CIVIL ACTION NO. 4:21-CV-615 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1] | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

I.    INTRODUCTION

Plaintiff Sabourah Edwards, an adult individual who resides in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3)

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision will be VACATED.

II.     BACKGROUND & PROCEDURAL HISTORY

On November 30, 2018, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 11).  In this application, Plaintiff alleged she became disabled on November 1, 2018, when she was fifty years old, due to the following conditions: carpal tunnel syndrome bilateral; depression; anxiety; high blood pressure; fatigue; neck and back pain; migraines; memory issues; and stomach issues. (Admin. Tr. 202). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, see, complete tasks, concentrate, understand, follow instructions, use her hands, and get along with others. (Admin. Tr. 238). She alleges her conditions also affect her memory. *Id.* Plaintiff has at least a high school education. (Admin. Tr. 23). Before the onset of her impairments, Plaintiff worked as an assistant teacher. *Id*.

On February 28, 2019, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 11). On March 9, 2019, Plaintiff requested an administrative hearing. *Id*.

On November 14, 2019, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Jarrod Tranguch (the "ALJ"). *Id*. On March 4, 2020, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 24). On April 1, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 186).

On February 3, 2021, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1).

On April 2, 2021, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id*. As relief, Plaintiff requests that the Court reverse the Commissioner's final decision and award benefits, or in the alternative remand this case to the Commissioner for a new administrative hearing. *Id*.

On August 13, 2021, the Commissioner filed an Answer. (Doc. 14). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not

entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id*. Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 15).

Plaintiff's Brief (Doc. 16), the Commissioner's Brief (Doc. 21), and Plaintiff's Reply (Doc. 22) have been filed.  This matter is now ready to decide.

III.    STANDARDS OF REVIEW

A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing

evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP
      SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4)

---

[2] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on March 4, 2020.

whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that

are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

Plaintiff raises the following issues in her statement of errors:

1.   The Commissioner under whom the ALJ issues the final decision served a longer term than the President and was removable for cause, in violation of the separation of powers; therefore, the decision is constitutionally defective and should be reversed.

2.   The ALJ found the opinion of the consultative psychologist not persuasive for erroneous reasons.

3.   The ALJ failed to consider all of the evidence regarding Plaintiff's cervical spine impairment, and consequently overestimated her RFC as permitting light work.

4.   The ALJ failed to present a hypothetical question containing all of Plaintiff's credibly established limitations to the VE.

(Doc. 16, p. 4).

A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his March 2020 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between November 30, 2018 (Plaintiff's alleged onset date) and March 4, 2020 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 13). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: degenerative disc disease and spondylosis of the cervical spine (status post decompression and fusion at C3-4 and C4-5 in 2011); carpal tunnel syndrome on the right (status post release in 2015); mild lift AC joint osteoarthritis; major depressive disorder; anxiety; and panic attacks. (Admin. Tr. 13). The ALJ also identified the following medically determinable non-severe impairments: thyroid nodules; mild hip osteoarthritis; low back pain; and hypertension. (Admin. Tr. 14). At step three, the ALJ found that, during the relevant period, Plaintiff did not have

Page 9 of 23

an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 416.967(b) as follows:

> She can lift and carry up to 20 pounds occasionally and ten pounds frequently. She is able to stand and/or walk up to six hours and sit for six hours over the course of an eight-hour workday. She can occasionally push and/or pull with the bilateral upper extremities, which includes the operation of levers and hand controls. She is unable to crawl or climb ladders, ropes or scaffolds. She cannot reach overhead or perform overhead work. She can frequently perform gross handling and fine manipulation with the right (dominant) upper extremity, which includes the ability to grip, grasp, handle, finger, feel, and keyboard. She can tolerate occasional exposure to vibration. She must avoid exposure to hazards such as unprotected heights and dangerous moving machinery. Mentally, she can perform jobs that are generally classified as unskilled in that they take no more than 30 days of training to learn with a specific vocational preparation (SVP) of two or less. She can perform "low stress" jobs that involve only occasional simple decision-making and only occasional changes in the work duties and work setting. She can tolerate occasional interaction with customers or members of the public.

(Admin. Tr. 16-17).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 22). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 23-24). To

support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: mail sorter (DOT #222.587-038); routing clerk (DOT #222.687-022); and photocopy machine clerk (DOT #207.685-014). (Admin. Tr. 24).

B.    WHETHER THE ALJ PROPERLY EVALUATED DR. BETTS'S OPINION

The Social Security Administration hired Dr. Betts to examine Plaintiff, write a narrative examination report, and complete an opinion on a standard check-box form about Plaintiff's ability to engage in mental work-related activities. On that form, Dr. Betts was asked to rate Plaintiff's ability to engage in a series of activities based on the following scale:

- None – Able to function in this area independently, appropriately, effectively, and on a sustained basis.
- Mild – Functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.
- Moderate – Functioning in this area independently, appropriately, effectively and on a sustained basis is fair.
- Marked – Functioning in this area independently, appropriately, effectively and on a sustained basis is seriously limited.
- Extreme – Unable to function in this area independently, appropriately, effectively, and on a sustained basis.

(Admin. Tr. 871).

In the medical source statement, Dr. Betts assessed that Plaintiff would have "marked" difficulty, or be "seriously limited" in her ability to engage in the

Page 11 of 23

following activities: understanding and remembering complex instructions; carrying out complex instructions, making judgments on complex work-related decisions; and responding appropriately to usual work situations and to changes in a routine work setting. (Admin. Tr. 871-872). Dr. Betts assessed that Plaintiff would have "moderate" difficulty or "fair" ability to engage in the following activities: making judgments on simple work-related decisions; interacting appropriately with supervisors; and interacting appropriately with co-workers. *Id.*

In the decision, the ALJ found that Dr. Betts's opinion was not persuasive. In doing so, the ALJ explained:

> Based on findings during the February 2019 evaluation, Dr. Betts opined that the claimant's ability to perform complex tasks and make complex decision was **"seriously limited," as was her ability to respond to usual changes in a routine work setting**. Otherwise, she exhibited "fair" ability to make simple judgments and interact with coworkers and supervisors. Her ability to perform simple tasks and interact with the public was only "slightly limited" (Exhibit D9F, p. 7-8). **The undersigned does not find this opinion especially persuasive, as the terms "fair" and "seriously limited" are not adequately defined, which renders them subject to various interpretations**. However, the examination observations are informative because the claimant's presentation and performance support the conclusion that she is best suited to simple tasks in a "low stress" environment with occasional public contact.

(Admin. Tr. 21-22) (emphasis added).

The Commissioner's regulations define a medical opinion as "a statement from a medical source about what [a claimant] can still do despite [his or her]

impairment(s) and whether [he or she has] one or more impairment-related limitations or restrictions in the following abilities:"

(i)     [The] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii)    [The] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii)   [The] ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv)    [The] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 416.913(a)(2). A "medical source" is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State of Federal Law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law. 20 C.F.R. § 416.902(d). If one medical source submits multiple medical opinions, and ALJ will articulate how he or she considered the medical opinions from that medical source in a single analysis. 20 C.F.R. § 416.920c(b)(1).

The Commissioner's regulations define "prior administrative medical findings" as:

> a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:
>
> (i)   The existence and severity of your impairment(s);
>
> (ii)   The existence and severity of your symptoms;
>
> (iii)   Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;
>
> (iv)   Your residual functional capacity;
>
> (v)   Whether your impairment(s) meets the duration requirement; and
>
> (vi)   How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. § 416.913(a)(5).

An ALJ's consideration of competing medical opinions and prior administrative medical findings is guided by the following factors: the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability); the extent to which the medical source's opinion is consistent with the record as a

whole (consistency); length of the treatment relationship between the claimant and the medical source; the frequency of examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.920c(c).

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 416.920c(b)(2). The ALJ will explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. The ALJ may, but is not required to, explain his or her consideration of the other factors unless there are two equally persuasive medical opinions about the same issue that are not exactly the same. 20 C.F.R. § 416.920c(b)(3). Unlike prior regulations, under the current regulatory scheme, when considering medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a).

As noted in the Social Security Administration's revisions to the regulations, "the articulation requirements in [the] final rules" are intended to "allow . . . a court to trace the path of an adjudicator's reasoning . . . .

Revisions To Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017). Furthermore, courts have held that the failure to properly consider, apply, and explain the factors under 20 C.F.R. § 416.920c is grounds for remand. *See e.g.*, *Muhammed A. v. Kijakazi*, No. 2:20-CV-13944, 2022 WL 1442175 (D.N.J. May 6, 2022).

Plaintiff argues that the ALJ's explanation for discounting the "marked" limitation "responding appropriately to usual work situations and to changes in a routine work environment" assessed by Dr. Betts misconstrues the opinion itself, and is inadequate. Specifically, Plaintiff contends:

> As the regulations provide, "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. § 416.920c(c)(3)(v); *see also Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). It is clear that had Dr. Betts' opinion been properly credited, the ALJ would have found Plaintiff disabled. Indeed, when asked by the ALJ to assume the marked limitation in ability to respond appropriately to routine work settings and to changes in a routine work setting assessed by Dr. Betts, the Vocational Expert testified that "there would be no jobs at any exertional level" (R. 91).

> However, the ALJ stated that he "does not find this opinion especially persuasive, as the terms 'fair' and 'seriously limited' are not adequately defined, which renders them subject to various interpretations" (R. 22). The ALJ's reasoning was erroneous.

> The ALJ's claim that Dr. Betts rated Ms. Edwards' limitations as "fair" and "seriously limited" is contrary to the evidence, which clearly shows that she found "marked" limitations with respect to Plaintiff's ability to respond to usual work situations and changes in a routine

Page 16 of 23

work setting (R. 872). Contrary to the ALJ's claim that Dr Betts' assessment was "subject to various interpretations," it is clear from the regulations what "marked" limitations are, and equally clear that marked limitations in the ability to adapt to changes in a routine work setting are work-preclusive, as the Vocational Expert testimony at the hearing confirmed. Thus, the ALJ's rationale for finding Dr. Betts' opinion "not...especially persuasive" is fundamentally flawed. Because the ALJ provided no other reason in support of his rejection of Dr. Betts' opinion, and because acceptance of her opinion would have resulted in a different outcome, the ALJ's decision should be reversed.

The Third Circuit has repeatedly held that "an ALJ is not free to set his own expertise against that of physicians who present competent medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)); *Wallace v. Sec'y of HHS*, 722 F.2d 1150, 1155 (3d Cir. 1983); *Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir. 1983) (especially improper to substitute judgment regarding mental impairment). Unfortunately, the ALJ here has substituted his lay opinion for the medical judgment of the examining psychologist, and his rejection of Dr. Betts' assessment is unsupported by the record and the reasoning he offers.

An ALJ "cannot reject evidence for no reason or the wrong reason." *Mason*, 994 F.2d at 1067, quoting *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981). Because the ALJ rejected Dr. Betts' opinion for erroneous reasons, his decision should be reversed.

(Doc. 16, pp. 8-12) (internal footnotes omitted).

In response, the Commissioner argues that the ALJ adequately accounted for this by limiting Plaintiff to work involving no more than occasional changes in work duties and setting. Specifically, the Commissioner contends:

Plaintiff, tellingly, does not argue that the ALJ improperly found Dr. Betts's opinions not persuasive under the new regulatory framework.

Page 17 of 23

Instead, Plaintiff argues that the ALJ's reasons for finding the opinion not persuasive erroneous as the terms "slightly impaired" and "fair" are terms are clear and were understood by the vocational expert (Pl.'s Br. at 11). Even assuming that these terms are clear and generally understood by vocational experts, the ALJ was essentially saying that Dr. Betts did not provide any clarity or explanation for her opinions and, therefore, they were unsupported. 20 C.F.R. § 416.920c(c)(1).

Moreover, the ALJ's residual functional capacity finding is mostly consistent with Dr. Betts's opinion (Tr. 16-17, 871-72). For instance, the ALJ limited Plaintiff to unskilled jobs that require no more than 30 days of training to learn with a specific vocational preparation (SVP) of two or less; "low stress" jobs that involve only occasional simple decision-making and only occasional changes in the work duties and work setting; and only occasional interaction with customers or the public (Tr. 16-17). This residual capacity finding is consistent with Dr. Betts's opinion that Plaintiff could not understand, remember, carry out, or make judgments on complex instructions (Tr. 871). It is also consistent with Dr. Betts's opinion that Plaintiff would have some difficulty interacting with others (Tr. 872).

Plaintiff highlights that Dr. Betts found Plaintiff was markedly limited in her ability to respond appropriately to usual work situations and changes in a routine work setting (872). However, the ALJ specifically limited Plaintiff to "low stress" jobs that involve only occasional changes in the work duties and work settings (Tr. 17). Thus, the ALJ specifically accounted for Plaintiff's difficulties in this area. The fact that Plaintiff would prefer a greater limitation is essentially asking this Court to substitute its factfinding for that of the ALJ's – something this Court is not empowered to do. *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)); *Stancavage v. Saul*, 469 F. Supp. 3d 311, 324 (M.D. Pa. 2020).

In sum, the ALJ properly considered Dr. Betts's opinion under the new medical evidence regulatory framework.

(Doc. 21, pp. 33-36).

In her reply brief, Plaintiff argues:

Defendant's claim that the ALJ somehow incorporated this marked limitation in his own RFC and hypothetical by limiting Plaintiff to "low stress" jobs with occasional changes. Def. Br. 35- 36. The Vocational Expert specifically testified, in response to the ALJ's own alternative hypothetical, that no jobs could be performed with Dr. Betts' marked limitation considered (R. 91). Finally, there is no merit whatsoever to Defendant's claim that "the ALJ was essentially saying that Dr. Betts did not provide any clarity or explanation for her opinions and, therefore, they were unsupported." Def. Br. 35. In fact, the ALJ nowhere said anything like this in his decision, and did not address the "marked" limitation assessed by Dr. Betts at all, despite the fact that expert testimony established that limitation to be work-preclusive (R. 21-22). The ALJ addressed neither supportability nor consistency, the two most important factors required to be considered under the regulations. 20 C.F.R. § 416.920c(b)(2). As such, his finding that Dr. Betts' opinion was not "especially persuasive" was not proper.

In short, the ALJ's rationale for finding Dr. Betts' opinion "not...especially persuasive" is based on fundamental error. Because the ALJ provided no other reason in support of his rejection of Dr. Betts' opinion, and because acceptance of her opinion would have resulted in a favorable decision, the ALJ's decision should be reversed for this reason alone.

(Doc. 22, p. 3).

Plaintiff's argument is well taken. As Plaintiff points out, the ALJ simply concluded that a phrase (i.e., "seriously limited") in the definition of a "marked" limitation on a standard Social Security Administration form is not adequately defined. The definition of "marked" impairment on the questionnaire is identical to the definition used by the Social Security Administration in its regulations to

define a "marked" limitation in the paragraph B criteria of the mental health listing in step three. Specifically, 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00f(2) provides:

> The five-point rating scale. We evaluate the effects of your mental disorder on each of the four areas of mental functioning based on a five-point rating scale consisting of none, mild, moderate, marked and extreme limitation. To satisfy the paragraph B criteria, your mental disorder must result in extreme limitation of one, or marked limitation of two, paragraph B areas of mental functioning. Under the listings, the five rating points are defined as follows:
>
> > a. No limitation (or none). Your functioning in this area independently, appropriately, effectively, and on a sustained basis.
> >
> > b. Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.
> >
> > c. Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
> >
> > d. Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
> >
> > e. Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

In this case, the ALJ applied the paragraph B criteria at step three, and did not suggest he had any difficulty interpreting the definition for a marked limitation. In fact, he quoted the definition used in both the questionnaire and in Appendix 1.

Page 20 of 23

(*See* Admin. Tr. 15) ("A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis."). Although the Commissioner attempts to rehabilitate the ALJ's decision by arguing that the Commissioner's explanation is also open to multiple interpretations, and the Commissioner was actually discounting the decision based on a lack of supporting explanation, I am not persuaded. Accordingly, I find that the ALJ erred either by failing to cite a proper basis for discounting this opinion, or by failing to adequately explain that basis.

Furthermore, I find that this error requires remand. Although the Commissioner argues that a "marked" limitation responding appropriately to usual work situations and to changes in a routine work environment is accounted for by the limitation to jobs that involve only occasional changes in work duties and work setting, I am not persuaded. The hearing transcript includes the following exchange between the ALJ and VE:

> Q    And for the third hypothetical question, in addition to the limitations from the first two hypotheticals, let's assume that the individual in question would have a marked limitation in the ability to respond appropriately to usual work situations and to changes in a routine work setting and by marked we'll define that as functioning in this area independently, appropriately, effectively and on a sustained basis would be seriously limited. Are there any jobs that you can identify that such an individual can perform?

A       No there would be no jobs at any exertional level.

(Admin. Tr. 91). Based on this testimony, if the "marked" limitation is credited

there is a possibility of a different outcome in this case. Accordingly, I find that the

ALJ's failure to adequately explain his rejection of the marked limitation by Dr.

Betts requires remand.

C.     PLAINTIFF'S REMAINING ARGUMENTS

Plaintiff has raised the following additional arguments in her statement of

errors:

1.     The Commissioner under whom the ALJ issues the final decision served a longer term than the President and was removable for cause, in violation of the separation of powers; therefore, the decision is constitutionally defective and should be reversed.

2.     The ALJ failed to consider all of the evidence regarding Plaintiff's cervical spine impairment, and consequently overestimated her RFC as permitting light work.

3.     The ALJ failed to present a hypothetical question containing all of Plaintiff's credibly established limitations to the VE.

Because I have found a clear basis for remand based on the ALJ's failure to

properly explain or support his decision to discount the marked limitation

responding appropriately to usual work situations and to changes in a routine work

environment in Dr. Betts's opinion, I need not address these remaining arguments.

To the extent any further error exists, it may be addressed on remand.

V.      CONCLUSION

I find that Plaintiff's request for remand will be GRANTED as follows:

(1)     The final decision of the Commissioner will be VACATED.

(2)     This case will be REMANDED to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

(3)     Final judgment will be issued in favor of Sabourah Edwards.

(4)     An appropriate order will be issued.

Date: July 19, 2022                          BY THE COURT

                                             _s/William I. Arbuckle_
                                             William I. Arbuckle
                                             U.S. Magistrate Judge